JOHN BRODERICK, MASSACHUSETTS BAR NO. 688739
ENVIRONMENTAL ENFORCEMENT SECTION
ENVIRONMENT AND NATURAL RESOURCES
UNITED STATES DEPARTMENT OF JUSTICE
P.O. BOX 7611, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044-7611
TELEPHONE: (202) 305-0302
FACSIMILE:  (202) 514-0097
Email: John.Broderick@usdoj.gov

BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
CHRISTINE G. ENGLAND, CALIFORNIA STATE BAR NO. 261501
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
Email: Christine.England@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>SUNROC CORP. D/B/A CLEMENTS CONCRETE CO.,<br><br>    Defendant. | Case No. 1: 18-cv-341<br><br>**CIVIL COMPLAINT** |

**CIVIL COMPLAINT - 1**

Plaintiff, the United States of America ("United States"), by authority of the Attorney General and through the undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THIS ACTION

1.     The United States brings this civil action for the imposition of civil penalties under Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d), for Defendant Sunroc Corporation's ("Sunroc") violations of Section 301 and its National Pollution Discharge Elimination System ("NPDES") permit issued under Section 402 of the CWA, 33 U.S.C. §§ 1311, 1342, and applicable implementing regulations relating to the discharge of process wastewater, storm water, and other pollutants to waters of the United States. These violations occurred at Defendant's sand and gravel processing and concrete production facility located in Boise, Idaho along the Boise River.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

3.     Venue is proper in the District of Idaho pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a) because Defendant is doing business within the district and a substantial part of the events giving rise to the claim occurred within the district.

4.     Authority to bring a civil action is vested in the Attorney General of the United States pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

**CIVIL COMPLAINT - 2**

<u>NOTICE TO THE STATE OF IDAHO</u>

5.      The United States has notified the State of Idaho of the commencement of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

<u>PARTIES</u>

6.      Plaintiff is the United States of America, acting at the request of the EPA.

7.      Defendant Sunroc is a corporation organized under the laws of Utah, with its principal place of business at 730 North 1500 West Orem, Utah 84057.

8.      Since October 5, 2007, Sunroc has been registered as a corporation by the Idaho Secretary of State.

9.      From December 1973 until on or about January 3, 2011, Clements Concrete Co. was an Idaho Corporation.

10.      On or about January 3, 2011, Sunroc merged with Clements Concrete Co., with Sunroc as the surviving entity.

11.      Defendant is doing business as Clements Concrete in Idaho.

<u>STATUTORY AND REGULATORY BACKGROUND</u>

12.      The Clean Water Act is designed to "restore and maintain the chemical, physical and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

13.      To accomplish the objectives of the CWA, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants to navigable waters except in compliance with, among other things, the terms and conditions of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14.      Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership [or] association."

**CIVIL COMPLAINT - 3**

15.    Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" as, among other things, "any addition of any pollutant to navigable waters from any point source."

16.    Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, solid waste, chemical wastes, biological materials, rock, sand, and industrial waste discharged into water.

17.    "Process wastewater" is defined by 40 C.F.R. § 122.2 as "any water which, during manufacturing or processing, comes into direct contact with or results from the production or use of any raw material, intermediate product, finished product, byproduct, or wasteproduct."

18.    Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States."

19.    "Waters of the United States" has been further defined to include, among other things, (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; and (ii) tributaries of such waters.  See 40 C.F.R. § 122.2 (1993).

20.    Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines a "point source" as "any discernible, confined and discrete conveyance including but not limited to any pipe, ditch, [or] channel … from which pollutants are or may be discharged."

21.    Section 402(a) of the CWA, 33 U.S.C. § 1342(a), authorizes the Administrator of the EPA to issue NPDES permits for the discharge of pollutants into navigable waters in compliance with the CWA.

22.    Section 308(a) of the CWA, 33 U.S.C. § 1318(a), authorizes the Administrator of the EPA to require the owner or operator of any point source to provide such information as the

Administrator may reasonably need to carry out the objectives of the CWA, including, among other things, the development and issuance of NPDES permits under Section 402 of the CWA, 33 U.S.C. § 1342.

23.     Pursuant to Sections 308 and 402 of the CWA, 33 U.S.C. §§ 1318 and 1342, EPA promulgated storm water discharge regulations at 40 C.F.R. § 122.26.

24.     Pursuant to Section 402(p)(2)(B), 33 U.S.C. § 1342(p)(2)(B), and EPA's implementing regulations at 40 C.F.R. § 122.26, a storm water discharge associated with industrial activity must be permitted.

25.     Facilities within the categories set out in 40 C.F.R. § 122.26(b)(14), including those in Standard Industrial Classification (SIC) codes 1442 (construction sand and gravel) and 3273 (concrete, gypsum and plaster products), are designated as industrial activities that must obtain storm water permit authorization.

26.     40 C.F.R. § 122.26(c)(1) provides that dischargers of storm water associated with industrial activity are required to apply for an individual permit or seek coverage under a general permit.

27.     On September 29, 1995, pursuant to its authority under Section 402 of the CWA, 33 U.S.C. § 1342, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("1995 MSGP").  EPA reissued the Multi-Sector General Permit for Industrial Activities on October 30, 2000 ("2000 MSGP"), 65 Fed. Reg. 64,746, and reissued it again on September 29, 2008 ("2008 MSGP"), 73 Fed. Reg. 56,527.

28.     Under the 2008 MSGP, a facility discharging storm water "associated with industrial activities" is required to submit a Notice of Intent ("NOI"), prepare and implement a

**CIVIL COMPLAINT - 5**

Storm Water Pollution Prevention Plan ("SWPPP"), conduct inspections, conduct monitoring and sampling, and meet other eligibility requirements.

29.     Under the 2008 MSGP, permit coverage becomes effective 30 days after the EPA has posted a copy of the completed NOI on the internet. Under Table 1.2 of the 2008 MSGP, when a new operator assumes responsibility for a facility, it is required to submit a new NOI a minimum of 30 days prior to taking over operational control in order to be covered by the MSGP for the discharge.

30.     Pursuant to 40 C.F.R. § 122.41(a), any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for an enforcement action.

31.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Section 301(a) of the CWA, 33 U.S.C. §§ 1311(a), or any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

32.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA Section 301(a) or 308, 33 U.S.C. §§ 1311(a) and 1318, or any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

<u>THE FACILITY</u>

33.     Since at least 2008, Sunroc d/b/a Clements Concrete has owned and operated a sand and gravel facility ("the Facility") located at 10988 Joplin Rd., Boise, Idaho.

34.     For over four decades, Facility operations have included sand and gravel mining, stone mining and aggregate crushing and washing.

**CIVIL COMPLAINT - 6**

35.     Aggregate mined from the open pit mining area is processed in a cone crusher and washed to remove silt, clay and other byproducts. The wash plant has a pump with the capacity to use up to 2,100 gallons of water per minute to clean crushed aggregate and sand.  In August 2009, Sunroc added a concrete batch plant to the Facility. With the addition of the concrete batch plant Sunroc also added a washout area to clean out concrete mixers used to deliver ready-mix concrete.

36.     The Facility is approximately 213 acres, and current operations involve the production of commercial grade sand and gravel, ready-mix concrete, and concrete jersey barriers.

37.     From at least 2008 until July 2014, the Facility managed its storm water and industrial process wastewater through a management system involving three settling ponds, each of a limited capacity.

38.     From at least 2008 until July 2014, storm water and industrial process wastewater flowed into an initial settling pond identified as Settling Pond One for the purposes of this complaint.  When Settling Pond One reached capacity, water flowed through a channel into the next settling pond, identified as Settling Pond Two, where it combined with groundwater from the Facility's actively mined area.

39.     Dewatering groundwater from the active mine area is required on a daily basis to allow for continued mining operation.

40.     When Settling Pond Two reaches capacity, water from Settling Pond Two is pumped to a third settling pond, identified as Settling Pond Three, at a higher elevation. Upon information and belief, subject to a reasonable opportunity for further investigation and

discovery, from at least 2008 until July 2014 the pump cycled on a regular basis during facility operations to maintain the level of water in Settling Pond Two.

41.    A man-made channel, approximately 630 yards long, connects Settling Pond Three to the Boise River.

42.    When the pump located at Settling Pond Two is operating and discharging water into Settling Pond Three, water discharges from Settling Pond Three through the man-made channel into the Boise River.

43.    In July 2014, Defendant installed a water clarifier to recycle the plant's process wastewater from its aggregate wash plant. The water clarifier removes byproducts from process wastewater so that the clarified water can be reintroduced into the aggregate wash plant.

44.    In June or July 2014, Defendant constructed an earthen detention dam at the far end of Settling Pond One.

45.    Upon information and belief, subject to a reasonable opportunity for further investigation and discovery, the installation of the water clarifier and construction of the earthen dam in July 2014 created a closed-circuit system for Defendant's industrial process wastewater streams such that process wastewater no longer entered Settling Pond Two, Settling Pond Three, or the man-made channel into the Boise River.

46.    The Boise River is a perennial tributary of the Snake River.  The Snake River flows into the Columbia River which flows into the Pacific Ocean.

47.    The Boise River is a water of the United States within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

GENERAL ALLEGATIONS

Process Wastewater

48.     At all times relevant to this Complaint, Defendant's operations at the Facility have included various activities, including aggregate mining, crushing and washing, and concrete production and delivery.

49.     At all times relevant to this Complaint, Defendant's operations at the Facility have included various activities, including washing the exterior and interior of concrete mixer trucks and other vehicles.

50.     Upon information and belief, subject to a reasonable opportunity for further investigation and discovery, since at least June 2014 Defendant's operations at the Facility have included various activities, including producing Jersey barriers by using forms, form-release agents, and various cleaning chemicals.

51.     The operations mentioned in paragraphs 48, 49, and 50 above require substantial volumes of wash water to operate.  Wash water that has passed through these operations is industrial process wastewater.

52.     From at least 2008 until July 2014 process wastewater from washing aggregate mined onsite was not treated and was discharged to Settling Pond One.

53.     From at least 2008 until July 2014, the process wastewater from washing the concrete mixer trucks flowed from a ramp into Settling Pond One.

54.     Upon information and belief, subject to a reasonable opportunity for further investigation and discovery, from at least June 2014 until July 2014, the process wastewater from producing Jersey barriers flowed from the production area into Settling Pond One.

**CIVIL COMPLAINT - 9**

55.     The process wastewater from each of the activities in paragraphs 52, 53, and 54 above contained, among other things, industrial waste, chemical waste, and solid waste including rock and sand, and is thus within the meaning of "pollutant" set forth at Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

56.     From at least 2008 until July 2014, process wastewater mixed with storm water in Settling Pond One, then drained by gravity to Settling Pond Two where it combined with groundwater pumped from active mining operations.  The mixture was then pumped into Settling Pond Three, from which it discharged through a man-made channel into the Boise River.

57.     The man-made channel is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

58.     Defendant did not have a NPDES permit authorizing discharges of process wastewater.

<u>Storm Water</u>

59.     The primary SIC code for the Facility is 1442 (construction sand and gravel). The Facility also includes a ready-mix concrete batch operation, which falls under the SIC code 3273 (concrete, gypsum, and plaster products).

60.     Under SIC 1442 and SIC 3273, the Facility falls within MSGP Sector J (Mineral Mining and Dressing) and Sector E (Glass, Clay, Cement, Concrete, and Gypsum Products). The Facility is thus subject to the NPDES requirements of the CWA and is eligible to discharge storm water under the 2008 MSGP.

61.     On May 27, 2009, Clements Concrete submitted a Notice of Intent (NOI) seeking coverage under EPA's 2008 MSGP.  Pursuant to Table 1-2 of the 2008 MSGP, Clements Concrete received authorization to discharge storm water under the permit, in compliance with

**CIVIL COMPLAINT - 10**

its terms and conditions, on June 26, 2009, 30 days after the EPA posted a copy of the completed NOI on the internet.

62.     On June 10, 12, and 18, 2014, EPA conducted a NPDES MSGP Compliance Sampling Inspection at the Facility.  The inspection included on and off-site sampling, interviews with managers and employees, a paperwork review of the SWPPP, a site tour, and a closing conference with Facility employees, managers, and Sunroc's environmental engineer.

## FIRST CLAIM FOR RELIEF
### (Unpermitted Discharge of Process Wastewater)

63.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

64.     Upon information and belief, from at least June 26, 2009 through July 2014, Defendant discharged process wastewaters containing pollutants from the Facility to waters of the United States without a NPDES permit, in violation of Section 301 of the CWA, 33 U.S.C. § 1311.  These discharges are not permitted or otherwise authorized by the CWA.

65.     Each day of discharge referred to in paragraph 64 above constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

66.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.2, Defendant is liable for civil penalties not to exceed $37,500 per day for each violation occurring after January 12, 2009.

## SECOND CLAIM FOR RELIEF
### (Failure to Minimize Exposure, Failure to Use Erosion and Sediment Controls, and Failure to Manage Runoff)

67.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

**CIVIL COMPLAINT - 11**

68.    The 2008 MSGP, Parts 2.1.2.1, 2.1.2.5, and 2.1.2.6, require control measures that include non-numeric technology-based effluent limits.  These limits include minimizing the exposure of manufacturing, processing, and material storage areas to rain, snowmelt, and runoff; implementing erosion and sediment controls by stabilizing exposed areas and containing runoff using structural and/or non-structural control measures; and managing runoff by diverting, infiltrating, reusing, containing, or otherwise reducing storm water runoff to minimize pollutants in a permittee's discharges.

69.    On at least June 12, 2014, and on information and belief, for other times to be determined after a reasonable opportunity for further investigation and discovery, Defendant did not implement any measures to limit exposure of pollutants to precipitation, stored raw material stockpiles outdoors with inadequate cover or protection to prevent or limit erosion, and failed to implement adequate best management practices to prevent material runoff from exposed raw materials.

70.    Each failure identified in paragraph 69 above constitutes a violation of the 2008 MSGP.

71.    Defendant is liable for a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

### THIRD CLAIM FOR RELIEF
**(Failure to use Good Housekeeping in Keeping Clean All Exposed Areas)**

72.    The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

73.    The 2008 MSGP, Part 2.1.2.2, requires control measures that include non-numeric technology-based effluent limits.  These limits include using the good housekeeping practices of

**CIVIL COMPLAINT - 12**

keeping clean all exposed areas that are potential sources of pollutants, using such measures as sweeping at regular intervals, keeping materials orderly and labeled, and storing materials in appropriate containers.

74.     For at least a portion of the time period between June 26, 2009 and June 12, 2014, Defendant failed to use good housekeeping practices, as evidenced by extensive soil staining from chemicals and byproducts in the area where the facility produces concrete Jersey Barriers.

75.     Each failure identified in paragraph 74 above constitutes a violation of the 2008 MSGP.

76.     Defendant is liable for a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

## FOURTH CLAIM FOR RELIEF
### (Failure to Implement Proper Spill Prevention and Response Procedures)

77.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

78.     The 2008 MSGP, Part 2.1.2.4, requires control measures that include non-numeric technology-based effluent limits.  These limits include implementing spill prevention and response procedures to minimize the potential for leaks, spills and other releases that may be exposed to storm water and developing plans for effective response to such spills if or when they occur.  At a minimum, permittees must implement, among other things, preventative measures such as barriers between material storage and traffic areas, secondary containment provisions, and procedures for material storage and handling.

79.     On at least June 12, 2014, and on information and belief, for other times to be determined after a reasonable opportunity for further investigation and discovery, the Defendant

**CIVIL COMPLAINT - 13**

stored chemical containers in outdoor locations throughout the Facility in areas without secondary containment.

80. Each failure identified in paragraph 79 above constitutes a violation of the 2008 MSGP.

81. Defendant is liable for a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

### FIFTH CLAIM FOR RELIEF
**(Failure to Train Employees)**

82. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

83. The 2008 MSGP, Part 2.1.2.9, requires control measures, including training all employees who work in areas where industrial materials or activities are exposed to storm water, or who are responsible for implementing activities necessary to meet the conditions of the permit.

84. The 2008 MSGP, Part 2.1.2.9, requires that training for employees must cover both the specific control measures used to achieve the effluent limits in Part 2.1.2.9, and the monitoring, inspection, planning, reporting and documentation requirements outlined throughout the MSGP.

85. For at least a portion of the time between June 26, 2009 and June 12, 2014, Defendant failed to provide adequate training to at least one Facility employee on MSGP implementation or on the SWPPP.

86. Each failure identified in paragraph 85 above constitutes a violation of the 2008 MSGP.

**CIVIL COMPLAINT - 14**

87.     Defendant is liable for a civil penalty of up to $37,500 per day for each violation which occurred after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d) and 40 C.F.R. § 19.2.

## SIXTH CLAIM FOR RELIEF
### (Failure to Eliminate Non-Storm Water Discharges)

88.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

89.     The 2008 MSGP, Part 2.1.2.10, requires control measures that include non-numeric technology-based effluent limits.  These limits include eliminating non-storm water discharges not authorized by an NPDES permit.

90.     On at least June 12, 2014, and on information and belief, for other times to be determined after a reasonable opportunity for further investigation and discovery, the Defendant took no action to separate process wastewater discharges from storm water, even though the SWPPP identified the need to do so.

91.     Each failure identified in paragraph 90 above constitutes a violation of the 2008 MSGP.

92.     Defendant is liable for a civil penalty of up to $37,500 per day for each violation which occurred after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

## SEVENTH CLAIM FOR RELIEF
### (Failure to Conduct Routine Facility Inspections)

93.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

94.     The 2008 MSGP, Part 4.1, requires permittees to conduct inspections at their facility, including conducting and documenting at least quarterly routine facility inspections.

**CIVIL COMPLAINT - 15**

Permittees must specify the relevant inspection schedules in their SWPPP documents and document the findings of each routine facility inspection performed.

95.     From approximately June 26, 2009 to at least June 12, 2014, Defendant failed to conduct and document quarterly routine facility inspections.

96.     Each failure identified in paragraph 95 above constitutes a violation of the 2008 MSGP.

97.     Defendant is liable for a civil penalty of up to $37,500 per day for each violation which occurred after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

## EIGHTH CLAIM FOR RELIEF
**(Failure to Conduct Quarterly Visual Assessments of Storm Water Discharges)**

98.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

99.     The 2008 MSGP, Part 4.2, requires permittees to conduct inspections at their facility, including quarterly visual assessment procedures.  The MSGP requires such visual assessments to be made of a sample in a clean, clear glass or plastic container, and examined in a well-lit area, for the following water quality characteristics: color; odor; clarity; floating solids; settled solids; suspended solids; foam; oil sheen; and other obvious indicators of storm water pollution.

100.    From at least November 8, 2013 to May 10, 2014, Defendant failed to conduct or document visual assessments in compliance with MSGP procedures.

101.    Each failure identified in paragraph 100 above constitutes a violation of the 2008 MSGP.

**CIVIL COMPLAINT - 16**

102.     Defendant is liable for a civil penalty of up to $37,500 per day for each violation which occurred after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

**NINTH CLAIM FOR RELIEF**
**(Failure to Conduct Annual Comprehensive Site Inspection)**

103.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

104.     The 2008 MSGP, Part 4.3, requires permittees to conduct inspections at their facility, including annual comprehensive site inspections covering: all areas of the facility affected by the requirements in the permit; a review of monitoring data; an examination of industrial materials, residue or trash that may have or could come into contact with storm water; leaks or spills; offsite tracking of industrial or waste materials; tracking of raw, final or waste materials from areas of no exposure to exposed areas; and control measures needing replacement, maintenance, or repair.

105.     From approximately June 26, 2009 to at least June 12, 2014, Defendant failed to conduct or document an annual comprehensive site inspection.

106.     Each failure identified in paragraph 105 above constitutes a violation of the 2008 MSGP.

107.     Defendant is liable for a civil penalty of up to $37,500 per day for each violation which occurred after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

## TENTH CLAIM FOR RELIEF
### (Failure to Provide Adequate Site Description in its Storm Water Pollution Prevention Plan)

108.　The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

109.　The 2008 MSGP, Part 5.1.2, requires permittees to prepare an adequate SWPPP, including a site description with a general location map, a description of the industrial activities at the permittee's facility, and an accurate site map showing, among other things, the location and extent of significant structures and impervious surfaces; the locations of potential pollutant sources; the locations and descriptions of all non-storm water discharges; and the locations of, among other things, fueling stations and vehicle and equipment maintenance and/or cleaning areas, where such activities are exposed to precipitation.

110.　From at least August 2009 to October 31, 2016, the Defendant failed to prepare an adequate SWPPP because it did not include a description of the site, site map, and an accurate and up-to-date description of storm water and wastewater management practices.  The SWPP site description failed to reference the truck wash area or concrete batch plant, incorrectly described storm water and process wastewater as separated wastewater streams, and did not describe the Jersey barrier production area or the relocation of the fueling and maintenance area.

111.　Each day on which a facility with storm water discharges associated with industrial activity fails to prepare an adequate SWPPP constitutes a separate violation of the 2008 MSGP.

112.　Defendant is liable for a civil penalty of up to $37,500 per day for each violation which occurred after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

## ELEVENTH CLAIM FOR RELIEF

**(Failure to Provide Adequate Summary of Potential Pollutant Sources in its Storm Water Pollution Prevention Plan)**

113. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

114. The 2008 MSGP, Part 5.1.3, requires permittees to prepare an adequate SWPPP, including a summary of potential pollution sources that documents areas at the permittee's facility where industrial materials or activities are exposed to storm water and from which allowable non-storm water discharges are released.

115. From at least August 2009 to June 12, 2014, Defendant failed to identify all potential pollution sources in the SWPPP. The SWPPP failed to document and describe the concrete mixing truck wash station, Jersey barrier production area, and concrete batch plant as potential sources of pollutants.

116. Each day on which a facility with storm water discharges associated with industrial activity fails to prepare an adequate SWPPP constitutes a separate violation of the 2008 MSGP.

117. Defendant is liable for a civil penalty of up to $37,500 per day for each violation which occurred after January 12, 2009, pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 40 C.F.R. § 19.2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully prays that this Court will:

A. Assess civil penalties against Defendant Sunroc Corporation for up to the maximum amounts provided in the applicable statutes;

**CIVIL COMPLAINT - 19**

B.      Award the United States its costs and expenses incurred in this action; and

C.      Grant such other relief as this Court may deem appropriate.

Respectfully submitted,


JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


/s/ John Broderick
JOHN BRODERICK
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Tel.: (202) 305-0302
Fax: (202) 514-0097
john.broderick@usdoj.gov


BART M. DAVIS
United States Attorney
CHRISTINE G. ENGLAND
Assistant United States Attorney

OF COUNSEL:

ALEX FIDIS
Assistant Regional Counsel
U.S. Environmental Protection Agency
1200 Sixth Avenue
Seattle, Washington 98101

**CIVIL COMPLAINT - 21**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John Broderick, U.S. Department of Justice/ENRD/EES, P.O. Box 7611, Ben Franklin Station, Washington DC 20044-7611
(202) 305-0302

## DEFENDANTS

Sunroc Corp. D/B/A Clements Concrete Co.

County of Residence of First Listed Defendant Ada
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Richard H. Hall, Stoehl Rives, LLP 101 S. Capitol Blvd., Suite 1900, Boise ID 83702

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government
  Plaintiff

☐ 2 U.S. Government
  Defendant

☐ 3 Federal Question
  *(U.S. Government Not a Party)*

☐ 4 Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☒ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Clean Water Act, 33 U.S.C. 1319
Brief description of cause:
CWA violations relating to the discharge of process wastewater and stormwater.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE 08/02/2018

SIGNATURE OF ATTORNEY OF RECORD /s/ John Broderick

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)　Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)　County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)　Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.　Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.　Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.　Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.　Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.　Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.　Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.　Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.